IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| SARAWIN NAT INTAKANOK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 116-038 |
| | ) | (Formerly CR 114-060) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

Petitioner Sarawin Nat Intakanok filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Petitioner raises numerous claims for relief, and the Court held an evidentiary hearing on September 8, 2017, regarding Grounds Five through Seven of his motion. Based on the evidence of record, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.       BACKGROUND

### A.       Indictment

On May 7, 2014, the grand jury in the Southern District of Georgia charged Petitioner with one count of attempted online enticement of a minor, in violation of 18 U.S.C. § 2422(b). United States v. Intakanok, CR 114-060, doc. no. 1 (S.D. Ga. May 7, 2014) (hereinafter "CR 114-060"). The indictment alleged Petitioner knowingly attempted to persuade, induce, entice, and coerce an individual he believed to be a thirteen-year-old girl to

engage in sexual activity for which he could have been charged with the Georgia state law crimes of child molestation and statutory rape.  Id.  The charge carried a minimum term of imprisonment of ten years and a maximum term of imprisonment of life.  CR 114-060, doc. no. 2.  Petitioner initially retained Adam M. Hames to represent him as trial counsel but later terminated Mr. Hames' representation and retained Bruce Harvey and Stuart M. Mones.  Id., doc. nos. 6, 13, 17.

Petitioner, through counsel, filed a motion to dismiss the indictment, arguing the indictment does not satisfy the elements of § 2422 because there are no facts indicating: (1) Petitioner attempted to entice the fictitious minor to engage in sexual conduct, either directly or indirectly through an intermediary, or (2) Petitioner did not take a substantial step toward violating § 2422.  Id., doc. nos. 23, 23-1.  Petitioner also filed a motion to suppress: (1) Petitioner's statements to officers as involuntary and (2) evidence discovered as a result of searching Petitioner's cell phone and computer.  Id., doc. nos. 24, 24-1.  The Court held a motions hearing on July 25, 2014, and denied both of Petitioner's motions on September 25, 2014.  Id., doc. nos. 36, 51.

### B.   Agreement to Plead Guilty

The Court originally scheduled trial for January 12, 2015, but granted Petitioner's unopposed motion to continue and rescheduled the trial for March 23, 2015.  Id., doc. nos. 53, 60, 61, 62.  The Court held a pretrial conference on March 18, 2015.  Id., doc. no. 73.  On March 20, 2015, Petitioner entered into a plea agreement with the government, and the Court held a change of plea hearing that day.  Id., doc. nos. 76-78.  Petitioner pleaded guilty to attempted online enticement of a minor.  Id., doc. nos. 77, 78.  In exchange for his guilty plea, the government and Petitioner agreed to a stipulated sentencing range of 120 to 140

months imprisonment.  Id., doc. no. 78, pp. 3.  The parties agreed to waive the preparation of a pre-sentence investigation report (PSR) prior to sentencing.  Id.  The government also agreed that it would not object to a recommendation for a two-point acceptance of responsibility reduction.  Id. at 4.

> Petitioner's plea agreement contained the following factual basis for his guilty plea:
>
> Between on or about March 4, 2014, and April 5, 2014, in Richmond County within the Southern District of Georgia, and elsewhere, the defendant, Sarawin Nat Intakanok, did use a facility of interstate and foreign commerce, that is the Internet and a mobile telephone, to knowingly attempt to persuade, induce, entice and coerce an individual he believed to be a thirteen-year-old girl to engage in sexual activity for which he could be charged with a criminal offense, that is Statutory Rape under Georgia Code Section 16-6-3, and Child Molestation under Georgia Code Section 16-6-4; in violation of Title 18, United States Code, Section 2422(b), and that he traveled to Augusta, Georgia from Atlanta, Georgia, in an effort to meet with the minor.

Id. at 2.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence.  Id. at 5.  Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal."  Id.  Petitioner also acknowledged he would be sentenced to "at least 5 years' supervised release" and would be "required to register as a sex offender upon his release from prison . . . ."  Id. at 2, 6.  By signing the Plea Agreement, Petitioner additionally attested he "read and carefully reviewed this agreement" with Messrs. Mones and Harvey and "that his attorney has represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney."  Id. at 6, 8.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first found Petitioner was competent to enter a guilty plea if he so desired. Id., doc. no. 86, pp. 4-5. Judge Hall reviewed the indictment, and Petitioner testified he had enough time to review the indictment with counsel. Id. at 8. Petitioner also testified he was satisfied with the assistance he received from counsel. Id. at 9. Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 9-11. Among the list of rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, the right to remain silent, and the right to appeal the verdict to the Eleventh Circuit. Id.

Petitioner asked for additional time to discuss the plea agreement with counsel. Id. at 11-12. After a brief recess, Petitioner testified under oath he had enough time to discuss the plea agreement with counsel. Id. at 12. Judge Hall reviewed the plea agreement, including the stipulated sentence range and the waiver of the preparation of a PSR prior to sentencing. Id. at 13-14. Judge Hall noted sentencing generally immediately follows a change of plea hearing where the plea agreement includes a stipulated sentence range but scheduled hearing for the next week so Petitioner's family could be in attendance. Id. at 14-15, 30. Additionally, Judge Hall reviewed the appeal waiver and its limited exceptions, and Petitioner acknowledged he agreed to the waiver. Id. at 15-16.

Judge Hall confirmed that, other than the promises the government made in the plea agreement, no one had made Petitioner any promises in order to get him to plead guilty, and Petitioner affirmed no one had given him any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 16. Judge Hall informed Petitioner twice he would

4

have to register as a sex offender, and Petitioner testified he understood the requirement. Id. at 16-18. Judge Hall reviewed the statutory penalty, which included a supervised release period of "five years to life," and Petitioner confirmed he understood. Id. at 17. Petitioner also testified he understood the Court would impose rules and conditions of his supervised release. Id. at 18.

Judge Hall reviewed the elements of the charge, and Petitioner admitted his conduct satisfied the required elements. Id. 20-21. Next, Judge Hall heard a factual basis for the guilty plea from FBI Special Agent Justin Garrick. Id. at 21-27. SA Garrick testified Richmond County Investigator Mark Dobbins served as an online undercover agent, posing as the father of a fictitious thirteen-year-old daughter. Id. at 22. Petitioner responded over the internet to an ad placed by Inv. Dobbins on Craigslist and the ensuing email exchange became sexual in nature. Id. at 22-25. Petitioner sought photographs of the daughter to verify her existence. Id. at 23. Approximately one month after the initial contact, Petitioner arranged to travel to Augusta from Atlanta to "meet and engage in sex with the daughter . . . ." Id. Petitioner arrived in Augusta during the night of August 4, 2014, and was surveilled by an FBI task force. Id. Petitioner sent Inv. Dobbins a picture from the Augusta area to verify his location. Id. at 25. Investigators found this photograph during a later search of Petitioner's phone. Id. Petitioner was arrested that night, and Inv. Dobbins interviewed him. Id. at 26. Petitioner admitted being the person involved in the email exchange with Inv. Dobbins. Id. Petitioner stated to Judge Hall he had no disagreement with anything SA Garrick recounted. Id. at 27. Petitioner also told Judge Hall he was guilty of the charge and wanted to plead guilty. Id. Finding this sufficient for acceptance of Petitioner's guilty plea, Chief Judge Hall allowed Petitioner to enter a guilty plea. Id. at 28.

## C.   Sentencing

Sentencing occurred on March 24, 2015.  Id., doc. no. 80.  Judge Hall explained the Court was bound by its acceptance of the guilty plea to sentence Petitioner within the stipulated range of 120 to 140 months of imprisonment.  Id., doc. no. 87, pp. 3-4.  Judge Hall then heard statements in mitigation from Mr. Mones, Petitioner, and Petitioner's brother.

Mr. Mones emphasized the strong support of Petitioner's family, who was present in the courtroom, and described Petitioner as a hard-working and productive member of the community.  Id. at 6.  Mr. Mones noted Petitioner financially supported his mother, was committed to meditation and Buddhism, and had a positive influence on his fellow inmates. Id.  Mr. Mones discussed Petitioner's drug addiction to methamphetamine and resulting impairment of his judgment and impulsive behavior.  Id. 6-7, 19-21.  Mr. Mones argued in favor of a sentence of 120 months, the statutory minimum, and asked that Petitioner receive treatment for his drug addiction.  Id. at 7, 21-22.

Petitioner's brother, Tanawin Intakanok, informed the Court of Petitioner's addiction to MDMA, methamphetamine, and cocaine, and testified Petitioner's drug addiction affected Petitioner's behavior; Petitioner did not eat, was more prone to outbursts, and was "not himself."  Id. at 7-9.  Petitioner then provided his own mitigating statements, apologizing profusely for the impact of his conduct on his family and friends.  Id. at 11-13.  Petitioner testified to his recreational drug use and its escalation, claiming his drug use severely impaired his perception and judgment.  Id.

After considering these statements in mitigation, Judge Hall emphasized Petitioner's case was not "more about drugs than about enticement of a minor . . . [and while] meth may have been a contributing factor . . . the reason we're here today is because [Petitioner]

attempted to entice a minor to have sex." Id. at 25. Judge Hall imposed a sentence of imprisonment of 130 months, twenty-five years supervised release, and a $100 special assessment. Id. at 28; id., doc. no. 81. Judge Hall also imposed several special conditions of supervised release, including a prohibition against possessing or using a computer with any type of network access or for employment purposes without prior written approval of the probation office. Id., doc. no. 87, p. 29-30. Judge Hall reminded Petitioner of the appeal waiver provision of his plea agreement. Id. at 31. The Court entered judgment on March 25, 2015. Id., doc. no. 81. Petitioner did not file a direct appeal.

**D.    § 2255 Proceedings**

Petitioner then timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

(1)    Petitioner's confession was involuntary and coerced through deception, and counsel erroneously informed Petitioner the ruling on his motion to dismiss and motion to suppress were not subject to interlocutory appeal.

(2)    (a) The government impermissibly charged both state and federal offenses before the grand jury and fraudulently obtained an indictment that divested the lower court of jurisdiction to take the guilty plea or impose a sentence, and (b) counsel was ineffective for failing to object.

(3)    Counsel was ineffective by refusing to use arguments contained in a paper proffered by Petitioner entitled "Enticers and Travelers, Law and Strategy in 'Child Sex' Cases" from a "Winning Strategies Seminar."

(4)    Petitioner's plea was not knowingly and voluntarily entered because the government committed fraud upon the Court when it entered into a binding plea agreement with Petitioner that included a stipulated sentencing range, when the U.S. Bureau of Prisons could use the Adam Walsh Act to civilly commit Petitioner for a term up to life, rendering the District Court's sentence meaningless and Petitioner was not informed about the possibility of potential consequences of his guilty plea, including civil commitment under the Adam Walsh Act.

(5)    Counsel was ineffective at sentencing by failing to object to a sentence

7

computation and judgment that included state charges of statutory rape and child molestation, ensuring Petitioner's sentence could be escalated to a possible life sentence by the implementation of civil commitment under the Adam Walsh Act; additionally, Counsel was ineffective for failing to inform Petitioner about the possibility of additional consequences of his guilty plea, including civil commitment under the Adam Walsh Act.

(6)     Counsel was ineffective for failing to file a notice of appeal in a timely manner after Petitioner explicitly instructed counsel to file an appeal at sentencing.  Counsel abandoned Petitioner and allowed the time for an appeal to expire.

(7)     Counsel was ineffective for failing to go to trial argue a circuit split on the Adult Intermediary Function before the United States Supreme Court and failing to argue Petitioner's conduct did not meet the elements of § 2422(b) and inform Petitioner of his defense to the charge.

(8)     In light of the Supreme Court's decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), § 2442(b) is unconstitutionally void for vagueness.

(<u>See generally</u> doc. nos. 1, 5, 11, 22-1.)

On September 8, 2017, the Court held a hearing on Grounds Five, Six, and Seven and heard testimony from Messrs. Harvey and Mones and Petitioner.  (Doc. nos. 35, 36.) Because the Rule of Sequestration was invoked, Messrs. Harvey and Mones were not present for each other's testimony.  (Doc. no. 36, p. 5.)

### 1.     Petitioner's Testimony

Petitioner hired Messrs. Harvey and Mones after his detention hearing to replace Mr. Hames.  (Doc. no. 36, p. 79.)  After the July 25, 2014 hearing regarding defense motions to dismiss and suppress, Mr. Harvey said he believed Petitioner was not factually guilty and recommended a bench trial to Petitioner.  (<u>Id.</u> at 80.)  However, Mr. Harvey said they did not "really even want to go to trial" and would try to get the best plea offer possible.  (<u>Id.</u> at 80-81.)  Mr. Harvey did not think they would be successful with the motions to dismiss and

suppress, but Petitioner wanted to keep the option of appealing the decision open as long as possible.  (Id. at 93.)

Counsel received a plea offer in December 2014 with a stipulated sentencing range of 120 to 140 months of imprisonment, and Mr. Mones discussed the plea offer with Petitioner. (Id. at 81.)   Mr. Mones "didn't think it was much of a plea offer" and recommended Petitioner reject it and go to trial.  (Id.)  Mr. Mones said the case was technical and Petitioner was factually innocent.  (Id.)  Petitioner wanted a jury trial.  (Id. at 82.)  However, at the March 18, 2015 pretrial conference, Mr. Mones blindsided Petitioner by changing his strategy and telling the Court he was considering a bench trial.  (Id. at 83.)  Petitioner understood Judge Hall was "very, very against these types of charges" and was concerned about having a bench trial before him.  (Id.)

Following the pretrial conference, Petitioner asked Mr. Mones if he would recommend taking the plea offer if Petitioner were his brother.  (Id. at 84.)  Mr. Mones recommended "look[ing] very hard at the plea."  (Id.)  Mr. Mones asked Petitioner if he wanted to get the deal back, and Petitioner said Mr. Mones could but he wasn't going to take it.  (Id. at 102.)

During their discussion about the plea offer, Mr. Mones reviewed the appeal waiver but did not discuss the Adam Walsh Act or the possibility of civil commitment.  (Id. at 85, 90.)  If Petitioner knew about the risk of civil commitment, he would not have taken the plea offer.  (Id. at 106.)  Petitioner understood the terms of the plea agreement prior to the change of plea hearing.  (Id. at 85.)  Petitioner knew the prosecutor would seek eighteen to twenty years of imprisonment if Petitioner were convicted following trial, and he knew the statute allowed for life imprisonment, but Mr. Mones never discussed Petitioner's sentencing exposure in terms of guidelines.  (Id. at 95.)  Petitioner weighed the potential for life

imprisonment against the desire to appeal the adult intermediary issue and decided to take the plea offer to limit his exposure.  (Id. at 95.)  Petitioner was aware the government planned to use his online communications with others related to sexual conduct with minors to enhance his sentence.  (Id. at 96.)  Petitioner ultimately decided to accept the plea offer.  (Id. at 104.)

At the change of plea hearing, Petitioner testified he understood the rights he was waiving and was satisfied with his counsel's representation.  (Id. at 86.)  Petitioner was unsure about taking the deal even then and asked for some time to review the agreement.  (Id. at 94-95.)  Petitioner did not discuss with Messrs. Harvey or Mones what would be presented at sentencing.  (Id. at 87.)  After sentencing, Petitioner "brought up" wanting to file an appeal with Mr. Mones based on the length of supervised release and special conditions restricting his use of computers.  (Id. at 88-89.)  If Petitioner knew the term of supervised release would be so long or the conditions would be imposed, he would have gone to trial.  (Id. at 106.)  Mr. Mones said he did not think the restrictions were as severe as Petitioner believed and they could try to get the supervised release terminated early.  (Id. at 89.)  Mr. Mones addressed Petitioner's concerns and did not "directly" advise against filing an appeal.  (Id. at 90.)  Petitioner "didn't follow up the request" to appeal the sentence with Mr. Mones.  (Id.)  Petitioner also did not communicate with Mr. Harvey after sentencing or ask him to file an appeal.  (Id. at 90-91.)

### 2.    Mr. Harvey's Testimony

Mr. Harvey has more than forty years of experience as an attorney, and his primary practice is criminal defense.  (Id. at 7.)  Mr. Harvey handles cases related to child exploitation "fairly regularly."  (Id. at 22.)  A client referred Petitioner to Mr. Harvey, and Mr. Mones represented Petitioner as co-counsel.  (Id. at 8.)

During the course of the representation, Mr. Harvey reviewed the discovery and determined Petitioner's conduct "fell within the parameters of what he was charged with" in the Eleventh Circuit. (Id. at 9, 11.) Mr. Harvey researched case law and found a circuit split regarding the enticement element of § 2422(b), specifically, regarding whether communications with an adult intermediary can satisfy the requirement. (Id. at 11-12, 24.) Messrs. Harvey and Mones reviewed the discovery with Petitioner, and Mr. Harvey told Petitioner he believed Petitioner would be convicted of the crime under Eleventh Circuit precedent. (Id. at 13.) Messrs. Harvey and Mones litigated the adult intermediary issue at the July 25, 2014 motions hearing to preserve the issue for appeal. (Id. at 24.)

Mr. Harvey suggested after the motions hearing that, if Petitioner decided to go to trial to preserve the adult intermediary issue and appeal it, then they should choose a bench trial. (Id. at 13-14.) However, Mr. Harvey warned him there was "absolutely no assurance" the U.S. Supreme Court would take the case. (Id. at 14.) Mr. Harvey told Petitioner the other option was to negotiate an acceptable plea and waive the right to appeal the issue. (Id.) Mr. Harvey was present while Mr. Mones explained to Petitioner the government would seek to use evidence of similar past conduct at trial, including communications with others regarding sex with minors, to increase Petitioner's sentence. (Id. at 25.)

Petitioner initially did not want to accept a negotiated plea but ultimately did. (Id.) Messrs. Harvey and Mones went over the written plea agreement with Petitioner before he entered the plea. (Id. at 15.) Petitioner asked for a recess during the change of plea hearing to discuss the plea agreement further with Messrs. Harvey and Mones. (Id.) During the recess, Mr. Harvey discussed the appeal waiver and its limitations with Petitioner. (Id. at 15-16.) Mr. Harvey also discussed the possibility that the Adam Walsh Act could apply to

Petitioner, resulting in civil commitment.  (Id. at 20.)  However, Mr. Harvey thought civil commitment was "very unlikely" in Petitioner's case because Petitioner did not have a history of similar criminal charges or physical contact with a child.  (Id. at 23.)

Mr. Harvey did not have any discussions with Petitioner following the change of plea hearing, and Mr. Harvey was not present at sentencing due to a conflict.  (Id. at 16, 27.) Petitioner never contacted Mr. Harvey following sentencing about any matter, including filing an appeal.  (Id. at 20.)

### 3.  Mr. Mones' Testimony

Mr. Mones has more than sixteen years of experience as an attorney, and his primary practice is criminal defense. (Id. at 31.) "A great deal" of Mr. Mones' practice is federal, and Mr. Mones worked on federal sexual enticement cases prior to representing Petitioner.  (Id. at 32.)   A family friend of Petitioner referred him to Messrs. Mones and Harvey.  (Id. at 32-33.)  Messrs. Mones and Harvey "split" the duties in the case.  (Id. at 33.)

Mr. Mones reviewed the discovery, including the emails from Petitioner that formed the basis of the charges.  (Id. at 34-35.)  Based on the evidence, Mr. Mones believed the likelihood of success at trial in this district and on appeal in this circuit was low and a plea agreement would be in Petitioner's best interest.  (Id. at 42.)  Based on his research, Mr. Mones determined the Eleventh Circuit is "the worst circuit for this charge" and believed Petitioner would likely face a harsh sentence.  (Id. at 43.)  Mr. Mones discussed with Petitioner the possibility of having a bench trial to preserve the issue for appeal but advised him it was unlikely the Supreme Court would take the case.  (Id.)  Nevertheless, Mr. Mones argued the issue at the pretrial motions hearing to preserve it for appeal.  (Id.)

Mr. Mones discussed the possibility of civil commitment with Petitioner in December 2014, and again while here for the change of plea hearing, but cannot recall if he used the words "Adam Walsh Act."  (Id. at 52, 59.)  Mr. Mones also told Petitioner civil commitment is "exceedingly rare and very unlikely in his case . . . ." (Id. at 52.)

Petitioner initially rejected the government's plea offer in December 2014 because he did not believe the sentence was fair.  (Id. at 45-46.)  Accordingly, Mr. Mones was preparing for trial through the March 18th pretrial conference and was prepared to go to trial on the scheduled date of March 23, 2015.  (Id. at 45-46, 76.)  Following the pretrial conference, Petitioner began considering a plea agreement again, and Mr. Mones was able to get the initial plea offer back from the government.  (Id. at 67-68.)  After Petitioner decided to accept, Mr. Mones discussed with Petitioner the terms of the offer for the second time.  (Id. at 68-69.)

Mr. Mones discussed potential supervised release conditions prior to sentencing and informed Petitioner they could affect his employment options.  (Id. at 58.)  Following sentencing, Mr. Mones discussed the term of supervised release and the special terms of probation regarding computer use imposed by the Court.  (Id. at 54.)  Mr. Mones told petitioner the computer restrictions are common in cases involving a computer, and they would likely be able to have the restrictions removed relatively quickly if Petitioner performed well on supervised release.  (Id.)  Petitioner asked Mr. Mones if there was "any point to an appeal."  (Id. at 55.) Mr. Mones again discussed the appellate waiver but told Petitioner he could submit an appeal and file an Anders brief, as he has done for other clients.  (Id.)  Petitioner "abandoned the idea immediately" and never asked Mr. Mones to

file an appeal.  (Id. at 56-57.)  Mr. Mones would have filed an appeal if Petitioner asked him to do so.  (Id.)

## II.    DISCUSSION

### A.    Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984); Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.  Indeed, "strategic choices are 'virtually unchallengeable.'"  Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690).  "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy."  Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993).  To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice.  Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id.  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the

presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome,

880 F.2d 362, 375 (11th Cir. 1989).   Furthermore, "where the alleged error of counsel is a failure to investigate or discovery potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea."  Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. at 59; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), cert. denied, 568 U.S. 966 (2012).   In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas."  Hill, 474 U.S. at 58.   Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea.  Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (en banc) (citations omitted).   Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial.  Hill, 474 U.S. at 56-59.

**B.     Ground Six Fails Because Petitioner Did Not Ask Counsel to File an Appeal, and Counsel Fulfilled Their Duty to Consult.**

Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule.   "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal."  Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Roe v. Flores-Ortega, 528 U.S. 470, 477-78 (2000) (holding it is professionally unreasonable for attorney to fail to follow

16

defendant's express appeal instructions). Thus, if the Court determines Messrs. Harvey and Mones failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.

Here, the Court need not make a credibility determination to resolve this Ground. Petitioner adamantly argued throughout his filings Messrs. Harvey and Mones "abandoned" him, even though Petitioner "specifically instructed Counsel Mones to file an appeal." (Doc. nos. 5, p. 5; 11, p. 24.) However, Petitioner admitted at the evidentiary hearing he discussed the possibility of a direct appeal with Mr. Mones and did not "follow up on the request" to file an appeal after Mr. Mones addressed Petitioner's concerns. (Doc. no. 36, p. 90.) Petitioner also testified he did not ask Mr. Harvey to file an appeal on his behalf. (Id. at 91.)

Likewise, Mr. Mones testified he discussed the appellate waiver with Petitioner in response to his inquiry regarding a direct appeal. (Id. at 55.) Mr. Mones also offered to submit an appeal and file an Anders brief if Petitioner desired. (Id.) However, Petitioner "abandoned the idea immediately" and did not ask Mr. Mones to file an appeal. (Id. at 56-57.) Mr. Harvey testified he was not at the sentencing hearing due to a conflict and Petitioner never attempted to communicate with him thereafter. (Id. at 16, 20, 27.) Thus, Petitioner's testimony is consistent with both Messrs.' Harvey and Mones' testimony that Petitioner did not ask them to file an appeal. Accordingly, Petitioner's Ground Six lost appeal claim is meritless.

Even in cases where a defendant does not specifically instruct his counsel to file an appeal, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal,'" and if counsel did not consult, whether there was a duty to do so. Thompson v. United States, 504 F.3d 1203, 1206-08 (11th Cir. 2007) (citing Flores-Ortega,

528 U.S. at 478, 480).   There is no dispute Mr. Mones did in fact consult with Petitioner about filing an appeal.   Petitioner testified Mr. Mones answered his questions about an appeal after sentencing and did not advise against filing an appeal.  (Doc. no. 36, p. 90.)  Mr. Mones testified he told Petitioner he would file an appeal on his behalf despite the appeal waiver but Petitioner did not instruct him to do so.  (Id. at 55.)  Thus, Messrs. Harvey and Mones fulfilled any duty they had to consult with Petitioner about filing an appeal, and Petitioner is not entitled to relief on Ground Six.

### C.   Petitioner's Guilty Plea Bars Grounds One, Two(b), Three, Five, and Seven, and All Four Claims Fail on the Merits.

#### 1.   Petitioner's Guilty Plea was Knowing and Voluntary.

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as

an intelligent admission of guilt." <u>Id.</u>  Thus, a defendant must receive "real notice of the true nature of the charged crime." <u>Id.</u>

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." <u>United States v. Moriarty</u>, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." <u>Id.</u> at 1020 (quoting <u>United States v. Dominguez Benitez</u>, 542 U.S. 74, 83 (2004)).

Judge Hall informed Petitioner in clear terms of the charge to which he was pleading guilty, and Petitioner testified he understood the charge.  CR 114-060, doc. no. 86, pp. 5-8. Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  <u>Id.</u> at 8-11.  Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement.  <u>Id.</u> at 16, 28-29.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction.  In particular, Judge Hall explained he could receive from ten years to life if convicted.  <u>Id.</u> at 17.  Judge Hall also explained Petitioner would have to register as a sex offender, could receive a term of supervised release of five years to life, and would be

subject to rules and conditions as part of supervised release, and Petitioner testified he understood. Id. at 16-18. Finally, Petitioner also testified he had enough time to discuss the case with Messrs. Harvey and Mones and was satisfied with the help he had received from them. Id. at 6-9, 12. Thus, Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea and was not coerced into pleading guilty. Moriarty, 429 F.3d at 1019.

At the change of plea hearing, Petitioner admitted his conduct would satisfy the elements of the crime and confirmed the accuracy of the facts presented by the government as the factual basis for the plea. CR 114-060, doc. no. 86, pp. 20-27. This factual presentation included information Petitioner initiated an email conversation with Inv. Dobbins as the fictional father of a fictional thirteen-year-old daughter and traveled from Atlanta to Augusta for the purpose of meeting with and engaging in sex with the fictional daughter. Id. Petitioner told Judge Hall he had no disagreement with anything in SA Garrick's presentation of the evidence and confirmed his desire to plead guilty to the charge delineated in the Plea Agreement. Id. at 27.

Accordingly, Petitioner cannot validly claim his guilty plea was unknowingly or involuntarily entered or there was no factual basis established for the guilty plea. Such assertions are contradicted by the record of the change of plea hearing and Petitioner's sworn testimony at that proceeding, as well as at the subsequent sentencing. "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his

statements were false."); <u>United States v. Stitzer</u>, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").  As Petitioner's plea was knowing and voluntary, his pretrial claims in Ground One, Two(b), Three, Five, and Seven are barred.[1]

   2.   **Grounds One, Two(b), Three, Five, and Seven Also Fail on the Merits.**

      a.   **Ground One Fails Because Petitioner's Confession to Inv. Dobbins Was Not Involuntary or Coerced.**

In Ground One, Petitioner argues: (1) his confession to Inv. Dobbins was involuntary and coerced because Inv. Dobbins told Petitioner he would determine whether the case would be prosecuted at the state or federal level; (2) Petitioner stated three times during the interview that "'[m]aybe he should speak with an attorney before [they] continue'"; and (3) defense counsel erroneously informed Petitioner the ruling on the motion to suppress was not subject to an interlocutory appeal.  (Doc. no. 1, pp. 4, 8; doc. no. 11, p. 6.)  Respondent argues Ground One "does nothing more than attempt to rehash the suppression arguments already made to and rejected by this Court."  (Doc. no. 4, p. 21.)

As an initial matter, Petitioner mistakes the present § 2255 motion as the proper method to appeal the denial of his motion to suppress in the underlying criminal case.  The appeal waiver in Petitioner's plea agreement prevented him from challenging the Court's denial on direct appeal, and the validity of his guilty plea prevents Petitioner from raising such a challenge here.  Furthermore, as discussed in § II.F below, Petitioner's challenge is procedurally barred because Petitioner did not raise it on direct appeal, and he does not meet

---

[1]Petitioner argues in Ground Four his guilty plea was not knowing and voluntary because counsel did not inform him of the risk of civil commitment under the Adam Walsh Act.  (Doc. no. 22, p. 14 n.5.)  As the Court determines below, Ground Four is meritless and does not undermine the validity of Petitioner's guilty plea.

any exception excusing his failure to do so.   Accordingly, Petitioner is barred from challenging the Court's denial of his motion to suppress.  In addition, arguments fail on the merits.

During the July 25, 2014 motions hearing, Mr. Mones argued at length Petitioner's confession was coerced because Inv. Dobbins told Petitioner he would determine whether the case would be prosecuted federally or by the state.  CR 114-060, doc. no. 63, pp. 90-93.  The Court carefully considered and discussed Petitioner's arguments in its Report and Recommendation ("R&R") determining Petitioner's motion to suppress statements be denied.  Id., doc. no. 40, pp. 7-12.  Petitioner filed objections to the R&R, arguing again the statements were coerced and should be suppressed.  Id., doc. no. 49, pp. 12-14.  Judge Hall then reviewed the record de novo, adopted the R&R over Petitioner's objections, and denied Petitioner's motion to suppress.  Id., doc. no. 51.

Petitioner argues the Court erred in denying the suppression motion, citing in support United States v. Castor 598 F. App'x 700 (11th Cir. 2015) and United States v. Lall 607 F.3d 1277 (11th Cir. 2010).   (Doc. no. 11, pp. 9-10.)   In Castor, the court determined the defendant's statements were not voluntary despite Miranda warnings because the interrogating officer deceptively told the defendant he could not be charged with additional drugs as a result of his statements.  Castor 598 F. App'x at 703-04.  Similarly, in Lall, the court determined the defendant did not make a valid waiver of his Miranda rights where the interrogating officer deceptively told the defendant his statements would not be used to pursue charges against him.  Lall, 607 F.3d at 1283-84.

Petitioner alleges Inv. Dobbins' statement that he had the authority to decide whether the case would be prosecuted in state or federal court was an "outright lie" intended to

deceive Petitioner.  (Doc. nos. 1, p. 7; 11, pp. 5, 7.)  Petitioner does not allege Inv. Dobbins made any promises to route the case in exchange for Petitioner's cooperation.  Furthermore, contrary to Petitioner's conclusory claim, Inv. Dobbins testified at the July 24th motions hearing he "had a choice" about where the case would be prosecuted.  CR 114-060, doc. no. 63, p. 59.  As explained in the August 19, 2014 R&R, Inv. Dobbins' authority to decide whether the case would proceed in state or federal court was "undisputed."  Id., doc. no. 40, p. 10.  Accordingly, Petitioner's argument that his statement to Inv. Dobbins was involuntary fails.

Second, Petitioner argues Inv. Dobbins continued questioning him despite him indicating "[m]aybe I should speak with an attorney before [they] continue."  (Doc. no. 1, p. 8.)  However, the Supreme Court has long held that, during an interrogation, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning."  Davis v. United States, 512 U.S. 452, 458-59 (1994) (citations omitted) (emphasis in original).  Thus, a remark such as "'[m]aybe I should talk to a lawyer'" is not a request for counsel and defense counsel's decision not to make this argument in support of the motion to suppress does not constitute ineffective assistance of counsel.  Id. at 462 (citation omitted).  Accordingly, Petitioner's statement was not a request for counsel.

Finally, Petitioner argues counsel misinformed him the denial of the motion to suppress was not subject to an interlocutory appeal prior to Petitioner deciding whether to plead guilty.  (Doc. no. 11, p. 5.)  However, "[a] defendant may not take an interlocutory appeal from an order denying a motion to suppress."  United States v. Hudson, Case Nos.

5:11cr3/MW/EMT, 5:14cv193/MW/EMT, 2017 WL 1682568, at *8 (N.D. Fla. Mar. 24, 2017) (citing Di Bella v. United States, 369 U.S. 121, 123-24 (1962)).  Petitioner cites no authority to the contrary in his conclusory argument.  Thus, Petitioner's argument fails.

Accordingly, Petitioner is not entitled to relief based on any of his Ground One arguments.

### b.      Ground Two Fails Because the Indictment Properly Referenced to Georgia State Criminal Statutes as an Element of § 2422(b).

In Ground Two, Petitioner alleged the government "impermissibly charged both State and Federal offenses" in the indictment, committing "fraud upon the court" and counsel was ineffective for failing to object to the indictment.  (Doc. nos. 1, p. 10; 11, pp. 12, 15-16.)  The government argues the indictment appropriately referenced state statutes in order to charge with specificity the third element of § 2422(b) that the defendant could have been charged with a criminal offense for engaging in the specified sexual activity.  (Doc. no. 4, pp. 22-23.)  The Eleventh Circuit has regularly upheld § 2422(b) convictions where the indictment referenced state statutes to satisfy the third element of § 2422(b).  See, e.g., United States v. Jockisch, 857 F.3d 1122,1124, 1135 (11th Cir. 2017) (upholding § 2422(b) conviction where indictment listed three Alabama statutes); United States v. Godwin, 399 F. App'x 484, 487, 490 (11th Cir. 2010) (upholding § 2422(b) conviction where indictment incorporated Florida statute).  Thus, the government properly referenced state statutes in the indictment, and counsel was not ineffective for failing to challenge the indictment on this basis.  United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).  Accordingly, Petitioner is not entitled to relief on Ground Two.

c.   **Ground Three Fails Because Counsel Was Not Ineffective for Failing to Use the Law and Strategy Paper Provided by Petitioner.**

Ground Three claims counsel was ineffective for failing to abide a pamphlet provided by Petitioner entitled "Enticers and Travelers, Law and Strategy in 'Child Sex' Cases" from a "Winning Strategies Seminar" when arguing the motion to dismiss the indictment.  (Doc. nos. 1, p. 12; 11, pp. 12, 14-16.)  Petitioner claims counsel should have made the following arguments at the motions hearing:  (1) Petitioner did not use a facility of interstate commerce as required by § 2422(b) because his communications never left the state; (2) an adult intermediary precludes conviction under § 2422(b); and (3) Petitioner could not have been convicted of the state statutes listed in the indictment.  (Doc. no. 11, pp. 14-16.)  Respondent argues counsel actually used the pamphlet, as every case cited in the motion to dismiss the indictment also appeared in the pamphlet and, even if they did not, Petitioner cannot show prejudice because "slight variations on the arguments . . . would not have changed the result."  (Doc. no. 4, pp. 23-24.)  Petitioner's claim fails because each argument raised in Ground Three is foreclosed by Eleventh Circuit precedent and counsel cannot be ineffective for failing to raise a meritless issue.  Winfield, 960 F.2d at 974.

First, the Eleventh Circuit has held intrastate use of telephone or internet lines is sufficient to show use of a facility or instrumentality of interstate commerce under § 2422(b).  United States v. Faris, 583 F.3d 756, 758-60 (11th Cir. 2009), superseded by statute on other grounds as recognized by, United States v. Jerchower, 631 F.3d 1181 (2011); United States v. Evans, 476 F.3d 1176, 1180-81 (11th Cir. 2007); United States v. Graves, No. 1:13-cr-417-WSD-JSA, 2014 WL 2589428, at *10 (N.D. Ga. June 9, 2014).  Accordingly, Petitioner's use of the Internet and telephone communications was sufficient, even if the

communications never crossed state lines.  Second, the Eleventh Circuit has rejected the argument that § 2422(b) does not apply where the defendant attempts to induce a minor to engage in illicit sexual acts through an adult intermediary.  United States v. Murrell, 368 F.3d 1283, 1286-88 (11th Cir. 2004).  Therefore, Petitioner's communications with the fictitious father were sufficient to satisfy § 2422(b).  Third, "§ 2422(b) does not require the defendant to violate the underlying state statute to be convicted."  Godwin, 399 F. App'x at 487 (citation omitted).  Thus, Petitioner need not have committed the acts required to satisfy the state statutes in order to satisfy the requirements of § 2422(b).  Because counsel cannot be ineffective for failing to raise losing arguments, Petitioner is not entitled to relief on his Ground Three claims.  Winfield, 960 F.2d at 974.

> ### d.   Ground Five Fails Because Defense Counsel Informed Petitioner of the Potential Consequences of His Conviction Prior to the Guilty Plea.

In Ground Five, Petitioner argues counsel was ineffective by:  (1) failing to inform him of the possibility of lifetime civil commitment under the Adam Walsh Act; (2) failing to object to inclusion of the state statutes in the indictment and plea agreement, thereby exposing him to the possibility of a lifetime civil commitment under the Adam Walsh Act; (3) failing to inform him of the possibility of twenty-five years of supervised release and the special conditions of supervised release; and (4) affirmatively misadvising Petitioner regarding (i) classification of § 2422(b) as a violent crime, (ii) whether the state statutes would affect Petitioner after sentencing and, (iii) whether Petitioner could be housed in a camp setting.  (Doc. nos. 1, p. 17; 11, pp. 17-24; 22, pp. 9-16.)   Respondent argues counsel did, in fact, discuss the possibility of civil commitment with Petitioner on two occasions even though they had no duty to do so.  (Doc. nos. 4, pp. 25-26; 26, p. 15-17; 38, p. 4.)

26

First, Petitioner argues counsel was ineffective by failing to inform him of the possibility of civil commitment under the Adam Walsh Act.   At the September 8th evidentiary hearing, Messrs. Harvey and Mones testified they informed Petitioner of the risk of civil commitment, and Petitioner testified they did not.  (Doc. no. 36, pp. 20, 52, 85.) Thus, the threshold issue relates to credibility.

"Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002)); see also United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004) (recognizing credibility determinations are within province of factfinder); Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004) (recognizing court's opportunity to observe and study witnesses to make credibility determination concerning testimony on ineffective assistance claim).  In making its credibility determination, the Court must take into consideration not only the interests of the witness, but also "the internal consistency of the [witness's] testimony, or his candor or demeanor on the stand."  Ramirez-Chilel, 289 F.3d at 749, 750 (citation omitted).

Here, the Court specifically credits the testimony of Messrs. Harvey and Mones over Petitioner.  Messrs. Harvey and Mones are seasoned attorneys with a long history of criminal defense work, are well-known to the Court, and have demonstrated themselves to be ethical and zealous advocates for their clients.  The testimony of Messrs. Harvey and Mones was internally consistent and logically sound, and remained so during cross-examination. Moreover, despite invocation of the Rule of Sequestration, both Messrs. Harvey and Mones

testified consistently that they discussed the possibility of civil commitment with Petitioner during the change of plea hearing when Petitioner requested a recess to discuss the plea agreement further with counsel.  (Doc. no. 36, pp. 20, 59.)

Petitioner's testimony is less credible.   In his initial motion, Petitioner indicated counsel was likely unaware of the risk of civil commitment under the Adam Walsh Act. (Doc. no. 1, p. 14.)  However, in his traverse, Petitioner, without providing any details about what advice he received, claims counsel gave him "affirmative misadvice regarding civil commitment."  (Doc. no. 11, p. 24.)  Then, Petitioner completely changed his story, claiming he received "zero advice regarding his serious civil commitment exposure."  (Doc. no. 22, p. 13.)  Finally, at the hearing, Petitioner testified he did not recall Messrs. Harvey and Mones advising him about the risk of civil commitment.  (Doc. no. 36, pp. 90, 106.)

Thus, the Court credits Messrs. Harvey and Mones' testimony over Petitioner's and finds Messrs. Harvey and Mones informed Petitioner of the risk of civil commitment under the Adam Walsh Act.  Accordingly, Petitioner's argument that counsel provided ineffective assistance of counsel by failing to do so is meritless.

Second, Petitioner argues counsel was ineffective by failing to object to the inclusion of the state statutes in his indictment and plea agreement.  As discussed above regarding Ground Two, the state statues were properly included in the indictment charging Petitioner with § 2422(b) and in the plea agreement.  Jockisch, 857 F.3d at 1124, 1135.  Furthermore, although Petitioner argues the state statutes "ensur[ed]" Petitioner would face "a possible life without parole sentence through . . . civil commitment," he provides no support for the conclusory allegation and there is no reason to believe inclusion of the state statutes makes it

more or less likely Petitioner will be civilly committed.  Accordingly, counsel cannot be ineffective for failing to raise this meritless issue.  Winfield, 960 F.2d at 974.

Third, Petitioner argues counsel was ineffective for failing to inform him of (1) the possibility of twenty-five years of supervised release and (2) the special conditions of supervised release that would be imposed as part of his sentence.  The plea agreement stated Petitioner would be subject to "at least 5 years' supervised release."  CR 114-060, doc. no. 78, p. 2.  Petitioner signed the plea agreement, indicating he "read and carefully reviewed" the agreement with counsel, "underst[ood] each provision" therein, and "voluntarily agree[d] to it."  Id. at 8.  During the change of plea hearing, Judge Hall informed Petitioner he "could receive supervised release after [his] prison sentence of five years to life," and Petitioner stated he understood.  Id., doc. no. 86, p. 17.  Thus, even if counsel failed to inform Petitioner of his exposure to a longer period of supervised release, Judge Hall's advice ensured no prejudice occurred.  See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (per curiam) (no prejudice where counsel's deficient advice about possible sentencing implications "cured" by district court explaining "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea").

Mr. Mones testified he informed Petitioner about the likely special conditions of supervised release and that they would likely affect his employment opportunities.  (Doc. no. 36, pp. 58-59.)  Mr. Mones stated he spends a lot of time discussing potential conditions in this type of case because the restrictions are likely to be more severe.  (Id.)  As previously explained, the Court finds Mr. Mones' testimony concerning his communications with Petitioner more credible than the testimony of Petitioner.  Judge Hall also informed

Petitioner at the change of plea hearing that the Court would impose "a number of rules and conditions" while Petitioner was on supervised release and his "conduct will be very carefully monitored."   CR 114-060, doc. no. 86, p. 18.   Petitioner acknowledged he understood. Id. Thus, Judge Hall's warning precluded the possibility of prejudice. Wilson, 245 F. App'x at 11-12.

Additionally, courts are not required to notify defendants before imposing special conditions of supervised release, and counsel does not render ineffective assistance where counsel has no prior knowledge of the terms the court will impose on supervised release. See United States v. Moran, 573 F.3d 1132, 1138 (11th Cir. 2009) (court not required to notify defendant before imposing special conditions of supervised release related to defendant's "proclivity for sexual misconduct"); Walker v. United States, Nos. 7:09-CV-90060, 7:07-CR-30 HL, 2010 WL 4026123, at *18 (M.D. Ga. May 24, 2010) (describing claim of ineffective assistance of counsel "inexplicable" where counsel could have no prior knowledge of supervise release terms), *report and recommendation adopted by*, 2010 WL 4026120 (M.D. Ga. Oct. 13, 2010).  As Petitioner does not allege Messrs. Harvey and Mones had prior knowledge of the special conditions the Court would ultimately impose, they did not provide ineffective assistance of counsel.

Finally, Petitioner argues counsel rendered ineffective assistance by affirmatively misadvising him: (i) § 2422(b) is not a "violent crime"; (ii) the state statutes  included in the charging language would not affect Petitioner after sentencing; and (iii) Petitioner could be housed in a camp setting during his incarceration.  (Doc. no. 11, p. 19.)  Initially, the Court finds it highly unlikely counsel provided affirmative misadvice on any of the matters cited by Petitioner based on Messrs. Harvey and Mones' experience in the field and Mr. Mones'

testimony regarding how thoroughly he reviewed the potential consequences of a guilty plea in this case and as a matter of course in cases of this ilk.  (Doc. no. 36, p. 58.)  However, even if the Court credited Petitioner's conclusory arguments regarding alleged affirmative misadvice, Petitioner is not entitled to relief.

First, Petitioner argues Mr. Mones affirmatively misadvised him § 2422(b) was not a "violent crime."  (Id.)  As Petitioner notes, the Eleventh Circuit determined in United States v. Keelan, 786 F.3d 865 (11th Cir. 2015), as a matter of first impression that § 2422(b) is a violent crime under 18 U.S.C. § 16(b).  However, the Eleventh Circuit decided Keelan on May 13, 2015—more than two months after Petitioner pleaded guilty.  Accordingly, even if Mr. Mones did, in fact, tell Petitioner § 2422(b) was not a violent crime, that position was not foreclosed by Eleventh Circuit precedent at the time he gave his legal opinion. Furthermore, the Keelan court noted neither it nor the parties could locate case law from any other circuits that had previously decided the issue.  Id. at 870 n.5.  Accordingly, such advice would not have been unreasonable or deficient under existing case law.[2]

Second, Petitioner argues Mr. Mones affirmatively misadvised him regarding whether the state statutes included in the charging language would affect Petitioner after sentencing. (Doc. no. 11, p. 19.)  However, Petitioner's conclusory argument does not indicate what advice Mr. Mones gave Petitioner regarding the effect of the inclusion of the state statutes, how the advice was incorrect, or what, if any, effect the state statutes have had following sentencing.  To the extent Petitioner is merely echoing his Ground Two argument that the

---

[2]The Court recognizes the Supreme Court very recently held in Sessions v. Dimaya, 584 U.S. _, 138 S. Ct. 1204, 1210-11, 1223 (2018), that 18 U.S.C. § 16(b), as incorporated by the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F), to be void for vagueness and a violation of the Constitution's guarantee of due process.  However, because the issue at stake here is the validity of Mr. Mones' advice to Petitioner in 2014, Dimaya does not impact the analysis of the present issue.

state statutes were not appropriately included in the indictment and plea agreement, that argument fails for the reasons stated above.

Third, Petitioner argues Mr. Mones gave him "affirmative misadvice on . . . whether Petitioner could be housed in a camp setting."  (Doc. no. 11, p. 19.)  Again, Petitioner does not specify what advice Mr. Mones gave Petitioner on the subject, let alone how the advice was incorrect.   Furthermore, Petitioner's conclusory argument is belied by his sworn affidavit, in which he states he asked Mr. Mones if he would be "'eligible for a camp'" and Mr. Mones told Petitioner he did not know.  (Doc. no. 1, p. 40.)  Mr. Mones certainly did not affirmatively misadvise Petitioner regarding his eligibility for camp confinement by telling Petitioner he did not know.  Finally, even if Mr. Mones incorrectly advised Petitioner, the misadvice would not constitute the type of "serious dereliction" in advice necessary to undermine the "fundamental interest in the finality" of Petitioner's guilty plea.  Hill, 474 U.S. at 58; Stano, 921 F.2d at 1150-51.

Accordingly, Petitioner is not entitled to relief on this ground.

### e.   Ground Seven Fails Because Messrs. Harvey and Mones Did Not Provide Ineffective Assistance By Choosing Not to Challenge the Sufficiency of the Evidence.

In Ground Seven, Petitioner argues counsel was ineffective by:  (1) failing to go to trial because Petitioner had a "complete defense" based on the adult intermediary theory; (2) failing to argue the circuit split regarding the adult intermediary theory before the Supreme Court; and (3) failing to argue Petitioner's conduct did not constitute a substantial step toward committing attempted online enticement of a minor.  (Doc. nos. 1, p. 27; 5, pp. 6-8; 11, p. 27; 22, pp. 20-24; 28, pp. 6-7.)

Petitioner's first argument is undermined by his decision to plead guilty in order to avoid exposure to a longer sentence following trial.  Messrs. Harvey and Mones researched the Eleventh Circuit case law and determined Petitioner's conduct fell within the scope of § 2422(b).  (Doc. no. 36, pp. 11, 42.)  Counsel was aware there was a circuit split regarding the adult intermediary issue but warned petitioner it was unlikely the Supreme Court would take the case to decide the circuit split and overturn Eleventh Circuit Precedent.  (Id. at 13-14, 43.)  As stated above, the Eleventh Circuit has rejected the argument that § 2422(b) does not apply where the defendant attempts to induce a minor to engage in illicit sexual acts through an adult intermediary.  Murrell, 368 F.3d at 1286-88.

Mr. Mones believed the likelihood of success in this district and circuit was low and a plea agreement was in Petitioner's best interest.  (Doc. no. 36, p. 42.)  Counsel informed Petitioner a plea agreement would involve an appeal waiver and explained what an appellate waiver entailed.  (Id. at 14-16, 43.)  Nevertheless, counsel discussed with Petitioner the possibility of conducting a bench trial to preserve the issue for appeal, if Petitioner desired.  (Id. at 13-14, 43.)  To keep the option of an appeal open, counsel argued the adult intermediary issue in its motion to dismiss and at the July 25th motions hearing to preserve the issue for appeal.  (Id. at 43.)  However, after balancing his concerns about exposure to an increased sentence against his desire to appeal the adult intermediary issue, Petitioner decided to accept the plea agreement, including the appellate waiver.  (Id. at 90, 95.)  Because Petitioner elected to forego the opportunity to appeal in order to ensure a shorter sentence, counsel was not ineffective for failing to argue the adult intermediary defense at trial or before the Supreme Court.

Additionally, even if, as Petitioner contends, he had a complete defense to the charge, "counsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances." Unite States v. Cronic, 466 U.S. 648, 657 n.19 (1984). Messrs. Harvey and Mones, both highly experienced criminal defense attorneys, determined based on the case law of the Eleventh Circuit and the facts of the case that Petitioner would face a very high likelihood of being convicted at trial and believed Petitioner's best option was to negotiate a favorable plea agreement. (Doc. no. 36, pp. 7, 13-14, 31, 42.) Indeed, counsel was able to negotiate a plea agreement that allowed Petitioner to be sentenced near the very bottom of the sentencing range. CR 114-060, doc. no. 78. Judge Hall also determined at the change of plea hearing there was an independent factual basis satisfying the essential elements of the offense before allowing Petitioner to enter a guilty plea. Id., doc. no. 86, pp. 27-28. This finding further indicates a likelihood that the evidence would have supported a conviction following trial. Accordingly, even if counsel believed a legitimate defense applied to Petitioner's case, it was reasonable under the circumstances to advise Petitioner to plead guilty to the plea agreement in order to avoid conviction at trial and a longer sentence. Most importantly, it was ultimately Petitioner who decided to plead guilty after weighing all of the risks and benefits. (Doc. no. 36, p. 90, 95.)

Second, counsel was not ineffective for failing to argue Petitioner's conduct was insufficient to satisfy the substantial step requirement. In fact, counsel raised this very argument in its motion to dismiss. CR 114-060, doc. nos. 23-1, p. 5. Also, the evidence indicates Petitioner's conduct satisfied the substantial step requirement. The question of whether a defendant took a substantial step toward committing § 2422(b) is a question of fact and a court must consider the totality of the defendant's actions when making the

determination.  United States v. Wilkerson, 702 F. App'x 843, 848 (11th Cir. 2017) (citing United States v. Rothenberg, 610 F.3d 621, 627 (11th Cir. 2010); United States v. Yost, 479 F.3d 815, 820 (11th Cir. 2007)).  The Eleventh Circuit has held communications soliciting sexual activity and travel to engage in sexual activity constitute substantial steps toward attempted inducement.  Yost, 479 F.3d at 848-49 (collecting cases).

Here, Petitioner's conduct satisfied both.  In his emails to Inv. Dobbins, Petitioner repeatedly indicated he would "go to great lengths" to meet up with the fictitious daughter, describing the opportunity as "special" and the "highlight of [his] entire year."  (Doc. no. 26-6, p. 2-3.)  Petitioner wrote, "let me k[n]ow what you'd need from me to move forward with this," indicating he was "super interested."  Petitioner stated he preferred "some one on one" with the daughter, but indicated he would "love to just be involved . . . if all we do is share her . . . ."  (Id. at 3.)  Additionally, Petitioner asked about the fictitious daughter's stamina, height, breast size, and past sexual experiences.  (Id.)  Finally, Petitioner testified under oath he agreed with SA Garrick's testimony that he traveled from Atlanta to Augusta to meet and engage in sexual conduct with the fictitious daughter.  CR 114-060, doc. no. 86, pp. 23, 27.  Thus, both Petitioner's online communications with Inv. Dobbins and travel to Augusta for the purpose of having sex with a minor are sufficient to satisfy the substantial step requirement.  Accordingly, because counsel cannot be ineffective for failing to raise a meritless issue, Petitioner is not entitled to relief based on this argument.  Winfield, 960 F.2d at 974.

### D.    Petitioner Is Not Entitled to Relief on His Ground Four Claims Because Petitioner Was Aware of the Potential Consequences of the Plea.

In Ground Four, Petitioner argues his plea was not knowing and voluntary because of the alleged deficiencies discussed in Ground Five.  (Doc. no. 1, p. 14.)  However, the Court

found above Petitioner's Ground Five arguments were meritless.   Specifically, the Court found:   (1) Messrs. Harvey and Mones informed Petitioner of the possibility of civil commitment before Petitioner entered his plea of not guilty; (2) Petitioner was informed about his supervised release exposure and that there would be conditions of supervised release; (3) the state statutes were legitimately included in the indictment and plea agreement; and   (4) Petitioner was not affirmatively misadvised regarding whether:   (a) § 2422(b) is a violent crime, (b) the state statutes would affect Petitioner after sentencing, and (c) Petitioner could be housed in a camp setting.   Thus, Petitioner was properly advised as to these matters and, thus, his guilty plea was not unknowing or involuntary.

Additionally, Petitioner argues in his post hearing brief his guilty plea was not knowing and voluntary because advice concerning the possibility of civil commitment was not included in the plea agreement and change of plea hearing.  (Doc. no. 37, p. 4.)  Although Petitioner cites no authority in support of his argument, other courts have held there is no obligation to advise defendants of the possibility of civil commitment prior to accepting a guilty plea.  United States v. Youngs, 687 F.3d 56, 63 (2d Cir. 2012.).  The court in Youngs held that because "the likelihood of [the defendant's] civil commitment is uncertain, both at the time of his plea and at the completion of his period of incarceration" the district court had "no obligation to advise [the defendant] of the possibility of civil commitment prior to accepting his guilty plea."  Id.; see also United States v. Kabore, Cr. No. 1:13-CR-217-ODE-ECS, 2014 WL 2808000, at *4 (N.D. Ga. May 6, 2014), *report and recommendation adopted as modified by* 2014 WL 2809870 (N.D. Ga. June 19, 2014) (citing Youngs approvingly for proposition failure of court to advise defendant regarding collateral consequences does not

deprive defendant of due process).  The Court finds the reasoning of <u>Youngs</u> and <u>Kabore</u>

convincing and holds Petitioner's guilty plea was knowing and voluntary.

Accordingly, Petitioner is not entitled to relief on his Ground Four claims.

**E.      Petitioner Is Not Entitled to Relief on His Ground Eight Claim Because § 2422(b) is Not Void for Vagueness.**

In Ground Eight, Petitioner argues § 2442(b) is unconstitutionally void for vagueness

in light of the Supreme Court's decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551

(2015).[3]  (Doc. nos. 5, pp. 8-9; 11, pp. 28-30.)

In <u>Johnson</u>, the Supreme Court found the residual clause of the Armed Career

Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), to be void for vagueness and a

violation of the Constitution's guarantee of due process.  <u>Johnson</u>, 135 S. Ct. at 2563.  The

residual clause of the ACCA violent felony definition includes a crime that "otherwise

involves conduct that presents a serious potential risk of physical injury to another."  18

U.S.C. § 924(e)(2)(B)(ii).

Long before the Court decided <u>Johnson</u>, the Eleventh Circuit rejected the argument

that § 2422(b) is unconstitutionally void for vagueness.  <u>United States v. Panfil</u>, 338 F.3d

1299, 1301 (11th Cir. 2003).  <u>Johnson</u> does not undermine the court's decision in <u>Panfil</u>

because § 2422(b) does not include the term "violent felony" or rely on a residual clause

similar to the one the Court held unconstitutional in <u>Johnson</u>.  <u>Prine v. United States</u>, CV No.

16-00218-GC, CR No. 13-0013-CG-N, 2017 WL 2485111, at *2-3 (S.D. Ala. May 12,

2017), *report and recommendation adopted by*, 2017 WL 2484188 (S.D. Ala. June 8, 2017)

---

[3]In his second motion to amend, Petitioner contends <u>Johnson</u> may also undermine the validity of <u>Comstock</u>, 560 U.S. 126 (2010), in which the Court upheld Congress' authority to authorize civil commitment under the Adam Walsh Act.  (Doc. no. 22, p. 14-15 n.5.) Petitioner concedes the issue is not ripe because civil commitment has not been imposed.

(holding <u>Johnson</u> inapplicable to § 2422(b)).   Furthermore, because Petitioner was not sentenced under the ACCA or the Career Offender Guideline, <u>Johnson</u> had no direct effect on his sentence.   <u>United States v. Haynes</u>, Case Nos. 3:10cr103/MCR/CJK, 3:16cv315/MCR/CJK, 2016 WL 5868064, at *1 (N.D. Fla. Sept. 9, 2016), *report and recommendation adopted by*, 2016 WL 5868082 (Oct. 5, 2016).   Accordingly, Petitioner is not entitled to relief on his Ground Eight claims.

### F.   Petitioner Procedurally Defaulted Grounds One, Two(a), Four, and Eight.

#### 1.   Procedural Bar to § 2255 Review and the Exceptions

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." <u>Brown v. United States</u>, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982)).   "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." <u>United States v. Montano</u>, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994)).   "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." <u>Mills</u>, 36 F.3d at 1055.   In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).   However, despite these restrictions on raising previously available challenges, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings, <u>Massaro v. United States</u>, 538 U.S. 500, 509 (2003).

Therefore, other than an ineffective assistance of counsel claim, for the Court to review a claim otherwise barred in collateral proceedings, Petitioner must show both cause and actual prejudice from the error of which he complains.   <u>Brown</u>, 720 F.3d at 1333;

Montano, 398 F.3d at 1280. "Cause" requires a showing of some external impediment that prevented a claim from previously being raised.  Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions."  Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

Montano, 398 F.3d at 1280 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  Actual innocence "applies to a severely confined category:  cases in which new reliable evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  McQuiggin v. Perkins, 569 U.S. 383, 394-95, 133 S. Ct. 1924, 1933 (2013) (internal quotations omitted) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011).

### 2.    Grounds One, Two(a), Four, and Eight Are Procedurally Defaulted Because Petitioner Did Not Raise Them on Direct Appeal.

Petitioner's Ground One claims regarding the voluntariness of his confession, Ground Two claims regarding the government referencing state statutes in the indictment, Ground Four claims regarding the voluntariness of his guilty plea, and Ground Eight claims are procedurally defaulted because Petitioner failed to raise the claims on direct appeal.  In his initial motion, Petitioner argues he did not raise any of the grounds because Messrs. Harvey

and Mones "abandoned" him by not filing a direct appeal on his behalf.  (Doc. no. 1, pp. 3, 9, 11, 16.)  Although an ineffective assistance of counsel claim may serve as "cause" for failing to raise an otherwise procedurally barred claim, Murray, 477 U.S. at 488, as discussed in detail above, Petitioner has not presented any such valid ineffective assistance claims. Specifically, Messrs. Harvey and Mones did not "abandon" Petitioner, as he contends, since Petitioner did not ask Messrs. Harvey and Mones to file an appeal on his behalf. Furthermore, Petitioner has not shown a sentencing error constituting a fundamental defect such that such claims would be reviewable in these § 2255 proceedings.  Nor can Petitioner satisfy the demanding actual innocence standard because by his own testimony at the change of plea hearing, he admitted his factual guilt as to the charge of attempted online enticement of a minor.  Thus, in addition to being meritless, as described above, Petitioner's challenges raised in Grounds One, Two(a), Four, and Eight are defaulted.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 22nd day of May, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA